857 P.2d 634

**Robert D. HUCK, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 20084.

Court of Appeals of Idaho.

July 29, 1993.

Michael G. Pierce, Cascade, for appellant.

Larry EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen., Boise, for respondent.

LANSING, Judge.

Robert Huck pled guilty and was convicted in 1989 of felony possession of a Schedule II controlled substance with intent to deliver in violation of Idaho Code § 37-2732(a)(1)(A). He later filed an application for post-conviction relief pursuant to I.C.

§ 19–4901 on grounds that his guilty plea was the product of ineffective assistance of counsel and coercion. The district court dismissed the application for post-conviction, and Huck appeals from that dismissal. We affirm.

On September 4, 1989, Huck was observed and tape-recorded while selling methamphetamine to a police informant. Later that day, the police obtained a warrant to search Huck's home. The search turned up, among other things, ten bindles of methamphetamine. Huck was arrested and charged with one count of possession of a Schedule II controlled substance with intent to deliver and one count of manufacturing a Schedule II controlled substance, I.C. § 37–2732(a). The prosecution also charged Huck with being a persistent violator subject to an enhanced penalty under I.C. § 19–2514. Huck was represented by counsel throughout the proceedings.

On December 29, 1989, Huck signed a written agreement by which he agreed to plead guilty to possession with intent to deliver. In return, the prosecution agreed to dismiss the manufacturing charge and the request for an enhanced penalty, and to recommend an aggregate sentence of ten years' incarceration with three years fixed and seven years indeterminate. The court accepted Huck's guilty plea and imposed the sentence recommended by the prosecutor. On Huck's initial appeal, we affirmed the sentence. *State v. Huck*, 119 Idaho 10, 802 P.2d 1222 (Ct.App.1990).

Approximately one and one-half years after his conviction, Huck filed an application for post-conviction relief seeking to set aside the conviction on grounds that his guilty plea was the result of both ineffective assistance of counsel and coercion. After an evidentiary hearing, the district court dismissed the petition. Huck now appeals that order.

I

We consider first Huck's contention that his guilty plea resulted from ineffective assistance of his former counsel. The alleged deficiency of counsel upon which he predicates this claim was his attorney's failure to pursue a motion to suppress the evidence found by police during execution of the warrant. Huck contends his attorney should have sought suppression because the search warrant was defective in that it incorrectly described the location of Huck's residence. He also maintains that the bindles of methamphetamine should have been suppressed because they were allegedly found inside a pickup truck that the warrant did not authorize the police to search. Huck's attorney did file a motion to suppress the evidence but did not await a decision on the motion from the court before advising Huck to plead guilty. Huck asserts that his attorney's failure to pursue the motion to suppress before advising Huck to plead guilty represents such incompetence as to constitute ineffective assistance of counsel because it deprived him of the ability to make a fully informed decision on whether to plead guilty.

Huck's application for post-conviction relief initiated a separate proceeding which is civil in nature. *State v. Bearshield*, 104 Idaho 676, 662 P.2d 548 (1983). Huck bore the burden of proving by a preponderance of evidence the allegations upon which his request for relief is based. *Russell v. State*, 118 Idaho 65, 794 P.2d 654 (Ct.App.1990); *Pierce v. State*, 109 Idaho 1018, 712 P.2d 719 (Ct.App.1985). On appeal we review the district court's factual findings to determine whether they are clearly erroneous. *Russell*, 118 Idaho at 67, 794 P.2d at 656. We give free and independent review, however, to the district court's application of law. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct.App.1992).

The right to representation by counsel afforded by the Sixth Amendment to the United States Constitution includes the right to be represented by reasonably competent counsel in an adequate fashion. *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Aragon v. State*, 114 Idaho 758, 760 P.2d 1174 (1988). It means that an accused is entitled to the reasonably competent assistance of a diligent, conscientious advo-

cate. *State v. Tucker*, 97 Idaho 4, 8, 539 P.2d 556, 560 (1975).

An applicant who alleges ineffective assistance of counsel must meet a two-level test. The applicant must prove, first, that counsel's performance was deficient and, second, that the applicant was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. To establish that counsel's representation has been so deficient as to render it ineffective, the petitioner must show that counsel's performance fell below a standard of "competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The petitioner must overcome a presumption that counsel was competent.

> Because of the distorting effects of hindsight in reconstructing the circumstances of counsel's challenged conduct, there is a strong presumption that counsel's performance was within the wide range of reasonable professional assistance—that is, "sound trial strategy."

*Russell*, 118 Idaho at 67, 794 P.2d at 656. To prove prejudice the petitioner must show a reasonable probability that, but for the attorney's inadequate performance, the outcome of the proceeding would have been different. *Davis v. State*, 116 Idaho 401, 775 P.2d 1243 (Ct.App.1989). Questions of the adequacy of counsel are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070.

The standards articulated above, although more frequently applied to conduct at trial, have equal applicability to the entry of a guilty plea. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Griffith v. State*, 121 Idaho 371, 373, 825 P.2d 94, 96 (Ct.App.1992). *See also State v. Soto*, 121 Idaho 53, 55, 822 P.2d 572, 574 (Ct.App.1991); *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

When considering whether an attorney's failure to file or pursue a motion to suppress or strike evidence constitutes incompetent performance, the court is required to examine the probability of success of such a motion in order to determine whether counsel's decision against pressing the motion was within the wide range of permissible discretion and sound trial strategy. In *Carter v. State*, 108 Idaho 788, 794–795, 702 P.2d 826, 832–833 (1985), the Idaho Supreme Court held that counsel's failure to move to suppress the defendant's confession constituted ineffective assistance because it was obvious that the confession would have been suppressed. In *Maxfield v. State*, 108 Idaho 493, 501, 700 P.2d 115, 123 (Ct.App.1985), we held that newly appointed counsel's failure to renew a motion to suppress was not deficient, since previous counsel had been unsuccessful on the same motion and no new grounds existed. Because it was clear that the new motion would have been denied as well, counsel's failure to make the motion was not deficient. *See also, Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct.App.1989), (counsel's failure to timely file a motion to suppress evidence seized from defendant's home was not deficient because defendant had failed to show that the items would have been suppressed); *State v. Youngblood*, 117 Idaho 160, 165, 786 P.2d 551, 556 (1990) (failure to move to suppress items seized was not error where items were obviously subject to plain view exception to exclusionary rule); *State v. Walters*, 120 Idaho 46, 56, 813 P.2d 857, 867 (1991) (failure of counsel to object to inadmissible opinion testimony was ineffective assistance.)

As noted above, in order to prevail on a claim of ineffective assistance of counsel an applicant must meet a two-pronged test. The applicant must show both that counsel's performance was deficient and that the deficiency prejudiced the applicant. Where the alleged deficiency is counsel's failure to file a suppression motion, a conclusion that the motion, if pursued, would not have been granted, is generally determinative of both prongs of the test. If the motion lacked merit and would have been

denied, counsel ordinarily would not be deficient for failing to pursue it, and, concomitantly, the petitioner could not have been prejudiced by the want of its pursuit.

In the instant case Huck first argues that he would have prevailed upon the merits of a suppression motion because the warrant upon which the search of his house and vehicle was based incorrectly described the location of the house. The warrant described the premises to be searched as, "The two story, light green, wood framed dwelling with a dark green garage separate from the dwelling. The dwelling & garage are located 1.7 miles west of State of Idaho Highway 55 on Roseberry (west) Rd. on the south side. The dwelling is occupied by Robert and Denise Huck." At the hearing on his application for post-conviction relief Huck established that the most accurate description of the place at which he resided was .6 miles on Irwin Lane. The state concedes that Huck's actual address was technically on Irwin Lane. However, the state presented evidence that Irwin Lane is simply an extension of West Roseberry Road and that the house described in the warrant is 1.7 miles west of state highway 55. That portion of the road on which Huck lived is referred to locally as Roseberry Road. The states argues, therefore, that because the premises are reasonably described, an officer would have no significant difficulty in distinguishing it from neighboring property.

An incorrect address for the premises to be searched may invalidate a search warrant. *State v. Yoder*, 96 Idaho 651, 534 P.2d 771 (1975). However, inaccurate directions to the premises to be searched will not make seized evidence inadmissible if a reasonable officer could ascertain and identify the place to be searched. If the defects in the description do not create a reasonable prospect that the wrong location will be searched, the error may be disregarded. *State v. Schaffer*, 112 Idaho 1024, 1028, 739 P.2d 323, 327 (1987).

In *State v. Carlson*, 101 Idaho 598, 618 P.2d 776 (1980) the Idaho Supreme Court was presented with circumstance very similar to those now before us. A search warrant described the premises to be searched as: "A white single story wood frame family residence, located just south of a yellow frame house approximately 100 yds. from the intersection of Amity Rd. and Kuna Rd. The residence is on the east side of Kuna Rd." In actuality the correct address was 4990 South Meridian Rd, but the road described was locally known as "Kuna Rd." The Court noted that because of the particularity with which the premises were themselves described a reasonable officer could find and search the premises notwithstanding the error in the address.

> Here the inclusion of the incorrect road name, by itself, served only to describe a technically nonexistent location which could never be mistakenly searched. The presence of the additional description assured that the officers could, and did, with reasonable effort, "ascertain and identify the place intended."

*Carlson*, 101 Idaho at 599, 618 P.2d at 777. The evidence found during the search was held admissible.

In ruling upon Huck's application for post-conviction relief the district court found that Irwin Lane is merely an extension of Roseberry Road and is locally known as "Roseberry Rd." There is substantial evidence in the record to support that finding. The former prosecutor, Clayton Anderson, who supervised the search, testified at the post-conviction hearing that Roseberry Road is a relatively straight road proceeding both east and west from state highway 55. The road runs west from highway 55 and eventually becomes a new road, Irwin Lane. He further testified that locally the Irwin Lane portion is referred to as Roseberry Road. He stated that if you proceed 1.7 miles west from highway 55 on Roseberry Road you arrive at the Huck's residence, and that there are no other premises anywhere in the vicinity of the Huck's residence with the physical features described in the warrant. Mr. Anderson further testified that he was with the police when the warrant was executed and that the officers had no difficulty in finding the premises.

On this evidence the district court concluded that Huck's motion to suppress evidence on grounds of an error in the address on the warrant lacked merit and would have been denied if Huck's attorney had pursued the motion. We agree. Huck has shown neither that his former attorney was deficient in failing to press for suppression of the evidence on those grounds nor that Huck was prejudiced by his attorney's performance in that regard.

Huck next contends that the seized bindles of methamphetamine should have been suppressed because they were allegedly found by police inside a pickup that the police were not authorized to search under terms of the warrant. The warrant, in addition to describing the premises to be searched, also authorized search of a black 1976 Chevrolet pickup with vehicle identification number CCD146F427068. That particular pickup described in the warrant had apparently been destroyed prior to the search and was in several pieces on the premises. The police did not search the described vehicle, but rather searched a 1977 dark blue Chevrolet pickup, with vehicle identification number CCL4472–115,544. Huck testified at the hearing on his application for post-conviction relief that the police found the bindles of methamphetamine in a pocketbook under the seat of the dark blue pickup. Huck argues, therefore, that the bindles of methamphetamines, along with other evidence found in the blue pickup, should have been suppressed because the search of that pickup was illegal.

The state does not argue that the search of the blue pickup was valid. Rather, the state presented testimony that the pocketbook containing the bindles of methamphetamines was not found in the pickup but was outside of the vehicle. The written inventory of seized evidence prepared by the police at the time of the search also indicated that the pocketbook was not inside the improperly searched pickup.

The district court found that the pocketbook was located about ten feet away from the pickup within the curtilage of the home, and that the evidence seized from the truck consisted merely of paraphernalia that was inconsequential to the underlying charges. These findings of the district court are well supported by substantial evidence. Therefore, we again conclude that Huck has failed to meet his burden of proving that his attorney was deficient or that Huck was prejudiced by the decision not to press forward with his motion to suppress evidence found in the blue pickup.

As a further basis for concluding that Huck's legal representation was not inadequate, we note that Huck's former attorney had tactical reasons for advising Huck to negotiate a plea agreement without first obtaining a decision on the suppression motion. The attorney testified at the hearing on the application for post-conviction relief that he believed Huck would have been convicted on at least one charge even if the evidence acquired through the search had been suppressed. He also felt the motion would not be successful and that the prosecutor's attitude toward a plea bargain might be adversely affected if Huck pursued a frivolous suppression motion. It was defense counsel's province to make such strategy choices. We will not second guess strategic and tactical decisions of trial counsel in the absence of evidence that the decision was the result of inadequate preparation, ignorance of the law, or other shortcomings capable of objective evaluation. *State v. Chapman*, 120 Idaho 466, 469, 816 P.2d 1023, 1026 (Ct.App.1991). In this case Huck's counsel was faced with a situation where, by pressing the suppression motion to a decision, he might not only lose his one strategic negotiating position but might also lose the cooperation of the prosecutor in plea negotiations by pursuing a nonmeritorious motion. By going forward with the negotiations he was able to secure an agreement from the prosecutor to drop one felony count, to drop a request for an enhanced penalty, and to limit the incarceration that would be recommended. Huck has not shown that counsel's decision was unsound or that it resulted from any shortcomings in counsel's knowledge or preparation.

For all of the foregoing reasons we affirm the district court's decision that Huck was not entitled to post-conviction relief on grounds of ineffective assistance of counsel.

## II

Next Huck contends that his guilty plea was not freely and voluntarily given but rather was induced by coercion. A guilty plea must be voluntary, knowing and intelligent to withstand scrutiny under both our United States and Idaho constitutions. *State v. Storm*, 123 Idaho 228, 846 P.2d 230, 232 (Ct.App.1993); *Amerson v. State*, 119 Idaho 994, 995–996, 812 P.2d 301, 302–303 (Ct.App.1991).

In determining whether the plea was voluntary, knowing and intelligent, we review all of the surrounding circumstances disclosed in the record. *State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976). A district court's finding that a plea is voluntary, knowing and intelligent is a question of fact which we will not disturb if it is supported by substantial evidence. *Odom v. State*, 121 Idaho 625, 628, 826 P.2d 1337, 1340 (Ct.App.1992).

Huck states that he was induced to enter the plea by a verbal promise from the prosecution that charges against Huck's wife would be dropped and that Huck would be placed on probation and given treatment for drug addiction rather than being incarcerated. Further Huck feared for the safety of his family and the health of his mother and stepfather, and he anticipated that if he pleaded guilty he would be released on probation so that he could take care of them. Therefore, according to Huck, since the sentencing judge did not sentence him to treatment and probation, his guilty plea was coerced and involuntary. The district court concluded that Huck failed to prove his claim of coercion. We agree.

At the hearing on the motion for post-conviction relief, Huck's former attorney testified that, although drug treatment was brought up in the negotiations, the former prosecutor, Mr. Anderson, refused to make it part of the agreement, and Anderson also refused to dismiss charges pending against Huck's wife. Anderson similarly testified that he made no promise to recommend drug treatment and probation and did not agree to request any sentence less than that specified in the plea agreement. The transcript of the hearing at which Huck pled guilty shows that before accepting Huck's guilty plea, the court asked Huck whether "anybody made any promises to you other than what's in that written document that you and your lawyer and the prosecutor signed?" Huck replied, "No, sir." Huck's response plainly discredits his present assertion that the prosecution made promises of leniency for Huck or his wife other than that specified in the written agreement. Moreover, at the hearing the district court informed Huck that it was very possible that the court would follow the sentence recommendation of the prosecution and that there was "no real expectation" of probation. Accordingly, we find no error in the district court's determination that Huck failed to prove he was induced to enter his guilty plea based upon false promises.

Huck further argues that he was coerced by individuals outside the criminal justice system into entering his plea. Huck testified at the post-conviction proceeding that he and his wife had received threats from "associates" in the drug community. They threatened that Huck's family would be harmed if he disclosed the identity of these "associates."

When Huck's guilty plea was taken, the district court asked Huck if he had been forced in any way into pleading guilty, and Huck said, "No." Huck now contends that he could not inform the court that he was being coerced into pleading guilty by these threats because it would have required him to name the individuals making the threats, thus endangering his wife, child and mother as well as himself.

The district court found that there was no evidence to support Huck's contention that the threats sought to extort a guilty plea from him. We agree. Even if the alleged threats were made, according to

Huck's own testimony they were designed to prevent Huck from disclosing his drug sources, not to induce a guilty plea. The record is devoid of evidence that agents of the state or third parties made any statements to Huck that could be construed as an attempt to coerce a guilty plea. Therefore, Huck has not met the burden of showing that his guilty plea was coerced and involuntary.

Because Huck has not shown that he was deprived of effective assistance of counsel or that his guilty plea was involuntary, the dismissal of his application for post-conviction relief is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.