927 P.2d 910 (1996)
129 Idaho 520
George L. BOMAN, Petitioner-Appellant,
v.
STATE of Idaho, Respondent.
No. 21915.
Court of Appeals of Idaho.
November 1, 1996.
Petition for Review Denied December 18, 1996.
*912 Kehne & Adams, Boise, for appellant. John M. Adams argued.
Alan G. Lance, Attorney General; Myrna A.I. Stahman, Deputy Attorney General, Boise, for respondent. Myrna A.I. Stahman argued.
SWANSTROM, Judge Pro Tem.
George L. Boman appeals from a district court order denying post-conviction relief. For the reasons stated below, we affirm.
In June 1993, this Court affirmed Boman's conviction and sentences for burglary in the first degree, battery with intent to commit a serious felony and use of a deadly weapon during the commission of a felony. State v. Boman, 123 Idaho 947, 854 P.2d 290 (Ct.App. 1993). Boman was represented by counsel from the Ada County Public Defender's office in the trial and that appeal. Thereafter Boman filed a pro se application for post-conviction relief. In his application, he asserted that he had been denied his right to counsel at a lineup in violation of the federal and Idaho constitutions and I.C. § 19-625(2)(H), which led to an out-of-court identification. He also alleged that the assistance he received from his counsel was ineffective.
The district court appointed counsel for Boman and conducted an evidentiary hearing on Boman's application for post-conviction relief. After considering arguments and post-trial memoranda, the district court denied all of Boman's post-conviction claims. From the order denying relief, Boman filed this appeal.
The issues we must decide are: (1) whether the Sixth Amendment of the United States Constitution or Article 1, Section 13 of the Idaho Constitution mandated that counsel for Boman be present at his preindictment lineup; (2) whether Boman's right to counsel under Idaho statutes required that counsel be present at the lineup; and, if either of these questions are answered in the affirmative, (3) whether the absence of counsel at the lineup requires the application of a per se rule excluding the identification evidence which was admitted at trial; (4) whether Boman was denied the effective assistance of counsel because of counsel's failure to attend the lineup; and (5) whether counsel was ineffective because he failed to move for suppression of the lineup evidence.

I.

DISCUSSION
Briefly stated, the facts leading to Boman's conviction and germane to the issues we discuss are as follows.
*913 On September 12, 1990, a man entered a cafe near downtown Boise at about 10 p.m. wearing a grey, hooded sweatshirt and pantyhose over his head. He grabbed a waiter, placed a knife to his throat, and demanded from the cashier, "Give me all the money or I'll cut him." When the waiter struggled with the man he fled and the waiter followed. During this time the cashier called 911 to report the incident. The waiter saw Boman get into the passenger side of a dark colored Maverick or Pinto and speed off.
The victims gave police a description of the man and the car. Within minutes a car matching the description was stopped by police. Boman was in the passenger seat and a grey, hooded sweatshirt was in the back seat. After an investigation, a knife with a palm print on it that matched Boman's palm print was found where the passenger door was opened. A pair of pantyhose was found on a street that was on the direct route from the cafe to the location where Boman was stopped.
The police immediately learned that Boman was wanted on other charges. He was arrested, taken to the police station, given his Miranda rights and interrogated. He denied any involvement in the attempted robbery. On the afternoon of September 14, 1990, before any formal charges were filed against Boman for the attempted robbery, the police obtained a detention order from a magistrate which authorized them to, among other things, conduct a lineup. Both witnesses to the attempted robbery identified Boman as the would-be robber.

A. Constitutional Right to Counsel
Since Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the right to counsel guarantees of the Sixth and Fourteenth Amendments are inapplicable to confrontations between the accused and witnesses against him which take place prior to the initiation of judicial criminal proceedings. See State v. Sadler, 95 Idaho 524, 528, 511 P.2d 806, 810 (1973); State v. Valdez, 117 Idaho 302, 307, 787 P.2d 288, 293 (Ct.App. 1989). Testimony concerning an identification which took place long before the commencement of any prosecution whatever will not be subjected to a per se exclusion rule. Kirby, 406 U.S. at 690, 92 S.Ct. at 1882-83. Boman does not disagree with this precedent, but takes his argument a step further.
Boman argues that, although he was being held for the lineup under a detention warrant, he was the main suspect of the police who had progressed from the investigative stage to the accusatory stage in the proceedings. Therefore, he contends that his constitutional right to counsel, under the Sixth Amendment, Fourteenth Amendment, and Article 1, Section 13 of the Idaho Constitution, had attached. Boman relies on United States v. LaPierre, 998 F.2d 1460 (9th Cir. 1993) as authority to vacate his conviction based on a denial of the right to counsel at the lineup.
Once the government has initiated "adversary judicial criminal proceedings," Kirby, 406 U.S. at 689, 92 S.Ct. at 1882, counsel's presence is "a requisite to conduct of the lineup." Wade, 388 U.S. at 237, 87 S.Ct. at 1937.
LaPierre, 998 F.2d at 1463. Conduct of the lineup in violation of the right to counsel implicates a per se exclusionary rule for resulting identifications. United States v. Wade, 388 U.S. 218, 237, 87 S.Ct. 1926, 1937-38, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).
Reliance upon LaPierre is largely misplaced, as the lineup in that case was clearly a "post-charge" lineup. However, Boman also cites United States v. Larkin, 978 F.2d 964 (7th Cir.1992), where the lineup occurred approximately three months prior to Larkin's indictment. The court in Larkin noted that "the right to counsel presumptively does not attach at pre-indictment lineups." Larkin, 978 F.2d at 969, citing Kirby, 406 U.S. at 688-89, 92 S.Ct. at 1881-82. The court went on to say, however, that a "defendant may rebut this presumption by demonstrating that, despite the absence of formal adversary judicial proceedings, `the government had crossed the constitutionally significant divide from fact-finder to adversary.'" Id. at 969, quoting United States ex rel. Hall v. Lane, 804 F.2d 79, 82 (7th Cir.1986), cert. denied, *914 480 U.S. 921, 107 S.Ct. 1382, 94 L.Ed.2d 696 (1987).
Even if we choose to follow Larkin, it does not mandate the result urged by Boman. While Larkin suggested that the government may not intentionally delay formal charges for purposes of holding a lineup outside the presence of defense counsel, the court held that Larkin made "no showing that the government crossed that line here." Larkin, 978 F.2d at 969. From our review of the record furnished to us in this appeal, we reach the same result here.
It is undisputed that shortly after Boman was stopped and detained after 10 p.m. on September 12, 1990, the police learned of outstanding warrants which enabled the police to arrest and hold Boman on charges not related to the attempted robbery of the Boise restaurant. Two days later, on the afternoon of September 14, 1990, the police (detective Anderson) and a deputy prosecuting attorney (Horton) obtained a detention order authorizing a lineup for a possible identification by the two witnesses to the attempted robbery. Although no charges relating to the attempted robbery had been filed and no counsel had been appointed to represent Boman, Horton phoned the public defender's office to advise them that a lineup was being arranged and to inquire if a public defender would be present at the lineup. Horton spoke to attorney Gus Cahill. As it happened, on this Friday afternoon, the public defenders were engaged in moving their offices from one building to another, and Cahill advised Horton that no one from the public defender's office would be at the lineup.
Detective Anderson testified that he told Boman about the lineup and read a copy of the detention order to Boman who said that he wanted to talk to an attorney. Anderson then called the public defender's office. Anderson testified that he spoke to attorney Ed Odessey and that he read the detention order to Odessey. Odessey then spoke to Boman, telling him to cooperate in the lineup, but not to answer any questions or make any statements except for speaking the words called for by the detention order. As noted earlier, the lineup was conducted without counsel being present. At the lineup, both witnesses independently identified Boman as the probable robber. Shortly thereafter Boman was formally charged with various crimes incident to the attempted robbery of the restaurant. A member of the public defender's office was then appointed to represent him on these charges.
We conclude from these summarized facts that there is no showing on Boman's part that the police delayed filing formal charges against Boman for the purpose of holding a lineup outside the presence of defense counsel. To the contrary, the police and the deputy prosecuting attorney each spoke to public defenders to alert them of the authorized lineup. As a result of these calls, Boman spoke with a public defender and received advice from him before the lineup. We concludeas the district judge implicitly didthat Boman failed to demonstrate that the government had crossed the constitutionally significant divide from fact-finder to adversary. See Larkin, supra, at 969. Therefore, the Sixth Amendment right to counsel did not attach to the preindictment lineup in Bowman's case.
Boman has also asserted that, under Article 1, Section 13 of the Idaho Constitution, he had a right to counsel at the lineup. However, Boman has submitted no separate argument or authority showing why the Idaho Constitution affords this right prior to the commencement of formal criminal charges. We are not persuaded that Article 1, Section 13 of the Idaho Constitution should be interpreted any more expansively than the federal constitution so as to provide Idaho citizens a right to counsel in pre-accusatory proceedings. See, for example, State v. Burris, 125 Idaho 289, 292-93, 869 P.2d 1384, 1387-88 (Ct.App.1994) (no state constitutional right to counsel before a breath test under I.C. § 18-8002, where the test is held to be an integral part of a civil proceeding, distinct from any accompanying "criminal prosecution"). Boman's constitutional right to counsel under the Sixth Amendment had not attached. Nor had the right attached under the Idaho Constitution. Thus, Boman has no constitutional right to the application of any per se rule to exclude the lineup identification.

*915 B. Statutory Right to Counsel
Under Idaho Code §§ 19-625(2)(H), 19-852 and 19-853, Boman had the right to be represented by counsel during the time he was being detained by order of the magistrate for the purpose of his appearance at a lineup. Section 19-625(2)(H) requires that the detention order specify that the person "identified or described shall have the right to legal counsel during the detention when such evidence is obtained and if he is unable to afford private counsel an attorney shall be provided at public expense as provided by section 19-852." This language was contained in the detention order and was read by detective Anderson to Boman.
The district court concluded that Boman's statutory right to counsel was satisfied "when Boman was allowed to consult with an attorney from the public defender's office on the telephone." The district court continued:
I decline to hold that it was necessary [for the police or prosecuting attorney] to arrange for the physical presence of counsel during the line-up procedure. I decline to hold that there was a denial of counsel such as would invoke Sixth Amendment considerations, necessitating a finding of prejudice per se. I conclude instead that the issue turns on effective assistance of counsel, which requires a showing that the lawyer's conduct [in not appearing at the line-up] would have made a difference. Kinley v. State, 108 Idaho 862, [702 P.2d 900] (Ct.App.1985).
Where, as here, the construction and application of a statute presents pure questions of law, we exercise free review. Hanks v. State, 121 Idaho 153, 154, 823 P.2d 187, 188 (Ct.App.1992). In this case we are not persuaded that the district court's ruling was erroneous. Rather, the judge's ruling was consistent with the general rule that one who claims error occurred must also show that harm resulted. Based upon the facts of this case, we agree that it is more appropriate to apply a rule requiring Boman to show that prejudice resulted from the alleged ineffectiveness of his counsel, rather than to apply a per se rule that prejudice must be presumed to exist when counsel fails to attend a preindictment lineup.

C. Ineffective Assistance Claims

1. Absence of counsel at lineup
Boman contends that he was entitled to post-conviction relief because of counsel's failure to appear for the lineup and subsequent failure to file a motion to suppress the lineup identification. Boman characterizes his counsel's conduct as negligence, although the district court appropriately viewed the claims as turning on the effective assistance of counsel.
When reviewing a decision denying an application for post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); Russell v. State, 118 Idaho 65, 794 P.2d 654 (Ct.App.1990). The role of the reviewing court is to determine whether there was substantial evidence to support the trial court's findings. Holmes v. State, 104 Idaho 312, 658 P.2d 983 (Ct.App.1983).
We review a claim of ineffective assistance of counsel as a mixed question of law and fact. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim, the applicant must show that the attorney's performance was deficient and that the applicant was prejudiced by the deficiency. Russell, 118 Idaho at 67, 794 P.2d at 656; Davis v. State, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct.App. 1989). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. Aragon v. State, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); Russell, 118 Idaho at 67, 794 P.2d at 656. To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. Aragon, 114 Idaho at 761, 760 P.2d at 1177; Russell, 118 Idaho at 67, 794 P.2d at 656.
Where counsel was totally absent or prevented from assisting the defendant during a critical stage of the criminal proceedings, *916 the presumption of prejudice should apply. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The lineup about which Boman complains, however, is not a critical stage, and counsel's competence at the lineup, therefore, is not a constitutional inquiry. If we nevertheless apply the Strickland prejudice requirement, Boman must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
At the hearing on the post-conviction application, Boman testified that he had spoken with counsel by telephone. Boman indicated that counsel had advised him to cooperate and participate in the lineup but not to volunteer any statements to the police. Trial counsel testified that detective Anderson had read the warrant of detention to him over the phone, informing him about the lineup and the other evidencing-gathering procedures authorized by the warrant. Counsel also testified that, had he attended the lineup, he would not have interfered in any way with the conduct of the lineup. The audio/video recording of the lineup, made by the police, did not disclose any suggestiveness in the lineup procedures. Under these facts, we conclude that Boman has not demonstrated how counsel's physical presence at the detention lineup would have resulted in the reasonable probability of a different outcome. The evidence supports the district court's finding that Boman was not prejudiced by counsel's absence at the lineup. Thus, we conclude that Boman has failed to show that he was denied effective assistance of counsel by the absence of counsel at the lineup.

2. Failure to file motion to suppress
Boman contends that the district court erred in concluding that his trial counsel was not ineffective for failing to move to suppress the lineup identification. Because Boman believed that the lineup was fraught with unfairness and suggestiveness, he claims that it was ineffective for counsel not to seek to exclude the identification derived from the lineup. Particularly, Boman testified at the post-conviction hearing that he was given grey slacks to wear during the lineup and that none of the other participants wore grey slacks; that he was in stocking feet while four of the participants had on "standard policeman shoes ... black and shiny," and one wore brown shoes; that all of the others "had more hair than I had at that time ... and their mustaches were fuller ... we didn't look the same."
In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the court properly may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted incompetent performance. Huck v. State, 124 Idaho 155, 158, 857 P.2d 634, 637 (Ct.App.1993). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the Strickland test. Id. at 158-59, 857 P.2d at 637-38.
Here, Boman's trial counsel testified that he had filed a motion in limine to keep out any reference to Boman being a drug addict, but no motion to suppress the lineup identification was filed. Counsel testified that Boman told him that the lineup was "no good," but counsel recalled that Boman's only stated concern was that one of the men in the lineup was a Chicano. Counsel also testified that his viewing of the video tape of the lineup before trial did not reveal any basis to file a motion to suppress either. Counsel recalled no complaints from Boman about the clothes or the footwear worn during the lineup. The identifying witness, who testified at the post-conviction hearing, also denied any unique characteristics of the clothes or the shoes worn by Boman or the others in the lineup.
The Due Process Clause of the Fourteenth Amendment forbids a pre-charge lineup that is unduly suggestive and conducive to irreparable misidentification. Kirby, 406 U.S. at 691, 92 S.Ct. at 1883, citing Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). A claim of suggestiveness in a lineup must be evaluated in light of the totality of the circumstances. *917 Stovall, 388 U.S. at 302, 87 S.Ct. at 1972-73. Only if we determine that the procedure was unnecessarily suggestive do we then inquire whether the resulting identifications were so tainted that they should have been excluded. State v. Smith, 116 Idaho 553, 556, 777 P.2d 1226, 1229 (Ct.App.1989), citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
The district court found that the video tape of the lineup revealed no suggestive variances of any kind which in any way highlighted or emphasized Boman's participation. The district court found that all of the participants were approximately the same build, all had mustaches and none of their clothing was distinctive. The district court found that Boman had not complained about the footwear in order for trial counsel to challenge the lineup on that basis. Moreover, the district court found incredible Boman's testimony about the footwear.
We conclude that these findings by the district court are supported by the evidence. We also conclude that Boman has failed to meet his burden of proving a deficiency in counsel's performance or any prejudice from counsel's decision not to pursue a suppression motion.

D. Cumulative Error
Finally, Boman submits that the cumulative effect of the errors he asserted warrant relief on his ineffective assistance claim. While this Court has recognized the doctrine of cumulative error, State v. Larsen, 123 Idaho 456, 459, 849 P.2d 129, 132 (Ct. App.1993), and State v. Campbell, 104 Idaho 705, 719, 662 P.2d 1149, 1163 (Ct.App.1983), a necessary predicate to application of the doctrine is a finding of error in the first instance. State v. Blackstead, 126 Idaho 14, 23, 878 P.2d 188, 197 (Ct.App.1994); Reynolds v. State, 126 Idaho 24, 32, 878 P.2d 198, 206 (Ct.App.1994). Having determined that the district court correctly held that the alleged errors of Boman's counsel did not constitute ineffective assistance, we conclude that Boman has failed to make a sufficient showing of prejudice regarding any cumulative effect of his counsel's conduct. Therefore, the doctrine of cumulative error has no applicability in this case.

II.

CONCLUSION
Upon the facts of this case, Boman can claim neither a federal nor state constitutional right to counsel at the lineup which preceded the filing of formal charges against him. Boman was not deprived of his statutory right to counsel. We hold that the state, in carrying out the detention warrant, made a good faith effort to have counsel for Boman present during the lineup; that the lineup was fairly conducted and was not unduly suggestive. We also hold that counsel's failure to attend the lineup with Boman did not prejudice Boman, and we will not apply a per se exclusionary rule to the preindictment lineup identification.
We also hold that Boman failed to show that his counsel was ineffective in failing to file a motion to suppress the lineup identification.
Accordingly, we affirm the district court's order denying post-conviction relief.
WALTERS, C.J., and LANSING, J., concur.