**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 41772/41773**

| | | |
|---|---|---|
| **TARANGO DEFOREST PADILLA,** | ) | **2014 Opinion No. 109** |
| | ) | |
| **Petitioner-Appellant,** | ) | **Filed:  December 23, 2014** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Randy J. Stoker, District Judge.

Judgment of the district court denying petition for post-conviction relief, <u>vacated</u> and <u>case remanded</u>.

Nevin, Benjamin, McKay & Bartlett, LLP; Deborah A. Whipple, Boise, for appellant.  Deborah A. Whipple argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.  Jessica M. Lorello argued.

_____

GUTIERREZ, Chief Judge

Tarango Deforest Padilla appeals from the district court's judgment denying his amended petition for post-conviction relief following an evidentiary hearing.  Specifically, Padilla contends that defense counsel provided ineffective assistance by failing to file a motion to suppress.  For the reasons that follow, we vacate and remand.

**I.**

**FACTS AND PROCEDURE**

In Twin Falls, a street runs north to south (the Street) and the Street is intersected by an alleyway that runs east to west (the Alley).[1]  At approximately 2:30 a.m. in August 2009, a Twin

---

[1]     The district court did not make findings of fact relevant to the events leading up to Padilla's running from the officer.  Rather, the district court summarized the procedural history

1

Falls police officer was in his marked police car in the Alley on the western side of the Street, facing the Street with the police car's headlights turned off. The officer was slowly driving his police car through the Alley toward the Street when he saw Padilla walking southbound on the Street, on the side of the Street farthest from the officer. Padilla entered the Alley across the Street from the officer (on the eastern side of the Street), fumbled around, and came out of the Alley and proceeded southbound on the Street. Padilla looked lost but did not appear intoxicated. The officer, who was about 100-150 feet from the western edge of the Street, proceeded to drive his car out of the Alley onto the Street and turned the car's headlights on. According to the officer, Padilla turned, looked toward the officer's car, turned again, and started running. The officer exited the vehicle and yelled for Padilla to stop, but Padilla kept running. Padilla jumped a few fences and the officer lost sight of Padilla. The officer radioed for assistance, and Padilla was eventually located under a tree by a second officer.[2]

A search of the area where Padilla was found revealed ceramic pieces of a spark plug, two financial transaction cards that did not belong to Padilla, and a flashlight. A subsequent warrantless search of Padilla revealed ceramic pieces of a spark plug, controlled substances, and two more financial transaction cards that did not belong to Padilla. After Padilla was arrested and transported to the jail, an officer determined that Padilla had an outstanding warrant for his arrest.

Padilla was charged with two counts of grand theft in relation to the financial transaction cards and was alleged to be a persistent violator in separate cases that were later consolidated for trial. Padilla was ultimately found guilty of the grand theft counts and was determined to be a persistent violator. He appealed, contending that the district court erred by denying his motion in limine to exclude the spark plug pieces and flashlight; we affirmed in *State v. Padilla*, Docket

---

of the case and decided the issue on the discovery of the arrest warrant. We derive our facts from the testimony of the officer in the underlying criminal case and from our prior opinion.

[2]     Padilla's account differs from the officer's account. According to Padilla's testimony at the evidentiary hearing, which was consistent with his testimony at trial, Padilla was in the alleyway when he heard a vehicle come at him at a high rate of speed, noting that the engine was revving. Padilla did not see headlights or any lighting before he took off running. According to Padilla, "[he] ran between two houses, thinking [he] was going to get jumped because [he] and [his] brothers have gotten jumped before." Padilla also did not hear the officer tell him to stop.

Nos. 38899/38900 (Ct. App. Dec. 28. 2012) (unpublished). Padilla then filed a pro se petition for post-conviction relief and with the assistance of counsel filed an amended petition for post-conviction relief. Relevant to this appeal, Padilla contended that defense counsel provided ineffective assistance by failing to file a motion to suppress. Specifically, Padilla argued that defense counsel should have moved to suppress evidence obtained as a result of an investigatory stop that was unsupported by reasonable suspicion. Following an evidentiary hearing, the district court denied the amended petition for post-conviction relief, and Padilla appeals.

## II.

## STANDARD OF REVIEW

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. Idaho Code § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. Idaho Rule of Civil Procedure 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

## III.

## ANALYSIS

On appeal, Padilla contends the district court erred by denying his petition for post-conviction relief, alleging ineffective assistance of defense counsel. A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State*, 121 Idaho 918, 924-25, 828 P.2d 1323, 1329-30 (Ct. App. 1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho

3

758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Id.* at 761, 760 P.2d at 1177. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994).

Specifically, Padilla argues that defense counsel should have moved to suppress evidence obtained as a result of an investigatory stop and subsequent search. In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted incompetent performance. *Boman v. State,* 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct. App. 1996). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the *Strickland* test. *Boman*, 129 Idaho at 526, 927 P.2d at 916.

## A.    The Arrest Warrant's Impact on the Search

Following the evidentiary hearing, the district court denied Padilla's petition on the basis that even if the investigatory stop was improper, the officer would have had the right to search Padilla following the discovery of the warrant for his arrest. On appeal, Padilla contends the district court's reasoning is incorrect because even if the warrant existed, the officers did not know about the warrant at the time of the search and thus, the warrant does not remove the taint from an unlawful seizure, citing *State v. Page*, 140 Idaho 841, 847, 103 P.3d 454, 460 (2004). The State acknowledges that the Idaho Supreme Court has applied the intervening circumstances test in determining whether evidence found as a result of a valid arrest on a warrant is sufficiently attenuated from an unlawful seizure immediately preceding the arrest, as articulated in *Page*.

Generally, evidence obtained as a result of an unlawful search or as a result of an unlawful seizure may not be used against the victim of the search. *State v. Van Dorne*, 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct. App. 2004); *see Wong Sun v. United States*, 371 U.S. 471, 485 (1963). However, an exception to the *Wong Sun* rule was recognized by the Idaho Supreme

4

Court in *Page*. In *Page*, the Idaho Supreme Court addressed a situation involving the unlawful seizure of Page, the discovery of an arrest warrant for Page following the unlawful seizure, and the search of Page incident to his arrest on the outstanding arrest warrant. The Idaho Supreme Court recognized that the attenuation doctrine--"whether the causal chain has been sufficiently attenuated to dissipate the taint of the unlawful conduct"--might support the admission of evidence obtained from a search following the lawful arrest. *Page*, 140 Idaho at 846, 103 P.3d at 459. The Court turned to a Seventh Circuit case, *United States v. Green*, 111 F.3d 515 (7th Cir. 1997), and found the attenuation analysis used by *Green* persuasive. *Page*, 140 Idaho at 846, 103 P.3d at 459. In *Green*, the Seventh Circuit considered three factors in determining whether the unlawful conduct was adequately attenuated from the search. *Page*, 140 Idaho at 846, 103 P.3d at 459. "The factors are: (1) the elapsed time between the misconduct and the acquisition of the evidence, (2) the occurrence of intervening circumstances, and (3) the flagrancy and purpose of the improper law enforcement action." *Id.* The Idaho Supreme Court then analyzed the *Green* factors in *Page* and ultimately determined that the post-arrest search of Page was attenuated from the unlawful seizure. *Page*, 140 Idaho at 847, 103 P.3d at 460.

However, *Page* specifically noted that if the search at issue occurred prior to an intervening circumstance (the discovery of an arrest warrant in that case), the "evidence seized prior to the arrest, unless justified by some other exception, would not be admissible simply because, ultimately, a valid arrest warrant was discovered." *Id.* In support of its contention, the Idaho Supreme Court cited to and relied on *State v. Maland*, 140 Idaho 817, 823-24, 103 P.3d 430, 436-37 (2004), a case it had decided a month before *Page*. In *Maland*, the Idaho Supreme Court held that the discovery of an arrest warrant following a search cannot be an intervening circumstance "because it occurred after the wrongful seizure of the evidence." *Maland*, 140 Idaho at 824, 103 P.3d at 437.

In this case, the evidence at issue originated from the search that occurred *prior to* the discovery of the arrest warrant. Thus, as in *Maland*, if the seizure of Padilla was unlawful, then the evidence resulting from the search prior to the discovery of the search warrant would not be admissible under the attenuation doctrine because the unearthing of the arrest warrant was not an intervening circumstance. Therefore, we examine whether we may affirm the denial of Padilla's

5

petition on the alternative theory that the police had reasonable suspicion to seize Padilla, as the State argues.[3]

## B.    The Investigatory Stop

Padilla contends that he established both deficient performance and prejudice in his attorney's failure to file a motion to suppress evidence seized as a result of the investigatory stop. The investigatory stop (also known as the investigative detention, investigatory seizure, or *Terry*[4] stop) "is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity." *State v. Moran-Soto*, 150 Idaho 175, 181, 244 P.3d 1261, 1267 (Ct. App. 2010) (citing *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003)). Padilla asserts that when he was stopped, the only facts the officer had to support the investigatory stop were Padilla's presence near the alleyway and his subsequent flight. Under circumstances similar to these, Padilla avers that several courts throughout the country have determined that flight may be a relevant factor in the totality of circumstances analysis following the United States Supreme Court's decision in *Illinois v. Wardlow*, 521 U.S. 119 (2000), but he asserts that flight by itself does not give rise to reasonable suspicion. With this in mind, Padilla argues that had defense counsel filed a motion to suppress, the trial court would have granted the motion to suppress, finding that the officer lacked reasonable suspicion based on specific articulable facts that Padilla was, had been, or was about to be engaged in criminal activity. Further, Padilla asserts that had his motion to suppress been granted, the State would have had no evidence linking Padilla to any thefts and the case would have been dismissed.[5]

---

[3]    At oral argument, the State, for the first time, argued that the officers had probable cause to arrest Padilla based on their finding financial transaction cards and ceramic spark plug pieces on the ground near Padilla. With this assertion, the State contended that even if there was a preceding illegal seizure, the probable cause to arrest Padilla and subsequent discovery of the warrant sufficiently attenuated the illegality to allow admission of the evidence on his person. The district court did not address this claim, and we will not address it further.

[4]    *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

[5]    We do not express an opinion on whether the financial transaction cards and spark plug pieces located in the area where Padilla was ultimately detained, although not on his person, were abandoned. "Abandonment, in the Fourth Amendment context, occurs through words, acts, and other objective facts indicating that the defendant voluntarily discarded, left behind, or otherwise relinquished his interest in his property." *State v. Harwood*, 133 Idaho 50, 52, 981

The State contends the district court did not err by denying the amended petition for post-conviction relief because the motion to suppress would not have been granted. The State argues that the officer who initially attempted to make contact with Padilla had reasonable suspicion to seize Padilla based on "commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 125. Specifically, the State asserts that "Padilla's entire behavior, from walking in and out of the alley at 2:30 in the morning, to fleeing when he saw [the officer], to emptying his pockets and hiding in the bushes was more than adequate to give [the officer] reasonable articulable suspicion to detain [Padilla]."

At the time of Padilla's arrest, the United States Supreme Court had declined to adopt per se rules regarding flight, but retained the totality of circumstances analysis when considering whether reasonable suspicion existed. In *Wardlow*, 528 U.S. at 124-25, a majority of the United States Supreme Court held that Wardlow's "presence in an area of heavy narcotics trafficking" along with "his unprovoked flight upon noticing the police" gave the officer reasonable suspicion under the totality of the circumstances to conduct an investigatory stop. There the majority explained that "[h]eadlong flight--wherever it occurs--is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* at 124. Unprovoked flight, according to the majority, "is simply not a mere refusal to cooperate. Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite." *Id.* at 125. The majority also explained that a reviewing court considering whether an officer had reasonable suspicion must take into account that "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Id.*

The rationale behind the majority decision was further elucidated by four justices who concurred in part and dissented in part. Justice Stevens, who authored the four justices' opinion, explained that Illinois asked the Court "to announce a 'bright-line rule' authorizing the temporary detention of anyone who flees at the mere sight of a police officer." *Id.* at 126 (Stevens, J. concurring in part and dissenting in part). Wardlow asked the Court to adopt the opposite per se rule: "that the fact that a person flees upon seeing the police can never, by itself,

---

P.2d 1160, 1162 (Ct. App. 1999). Evidence that is abandoned prior to a seizure is not fruit of a seizure. *State v. Agundis*, 127 Idaho 587, 591, 903 P.2d 752, 756 (Ct. App. 1995). But, when the abandonment is the result of illegal police conduct, the abandonment is not voluntary. *Harwood*, 133 Idaho at 52, 981 P.2d at 1162.

be sufficient to justify a temporary investigative stop." *Id.* According to the four justices, the Court wisely retained the totality of circumstances analysis:

> The Court today wisely endorses neither *per se* rule. Instead, it rejects the proposition that "flight is . . . necessarily indicative of ongoing criminal activity," . . . adhering to the view that "[t]he concept of reasonable suspicion . . . is not readily, or even usefully, reduced to a neat set of legal rules," but must be determined by looking to "the totality of the circumstances--the whole picture."

*Id.* at 126-27. Unlike the majority, the four justices were not persuaded that the officer had reasonable suspicion, *id.* at 127, because of the factual insufficiency of the officer's testimony, *id.* at 137.

In light of *Wardlow*, courts considering how flight factors into reasonable suspicion have developed competing rationales to hold that flight alone is sufficient or insufficient to give rise to reasonable suspicion, as explained by the Iowa Supreme Court in *State v. Kreps*, 650 N.W.2d 636, 643-44 (Iowa 2002). Some courts, for instance, have held that flight alone is insufficient. *E.g.*, *State v. Hicks*, 488 N.W.2d 359, 363-65 (Neb. 1992) (detailing why flight alone is insufficient, although decided pre-*Wardlow*). The Iowa Supreme Court summarized its understanding of the applicability of flight in the reasonable suspicion analysis by noting that "the circumstances surrounding the suspect's efforts to avoid the police must be such as to allow a rational conclusion that flight indicated a consciousness of guilt." *Kreps*, 650 N.W.2d at 644 (citing *Smith v. United States*, 558 A.2d 312, 316 (D.C. 1989)). According to the Iowa Supreme Court, "the key is that the relationship between the police presence and the suspect's flight was *causal* rather than *coincidental*." *Id.*

The "key" factor for flight, recognized by the Iowa Supreme Court, was implicit in the United States Supreme Court's *Wardlow* analysis, as the Court relied on Wardlow's *unprovoked flight upon noticing the police*. *Wardlow*, 528 U.S. at 124. One of the pre-*Wardlow* cases, cited and quoted in *Kreps*, further explains why a defendant's flight may not give rise to reasonable suspicion:

> Jones's evasive actions and flight from two strange men riding in an unmarked car and exhibiting no indicia of lawful authority were only natural reactions to the circumstances. While a person's flight from law enforcement officers may be a fact used to support an officer's reasonable suspicion that criminal activity is afoot, here Deputy Herrington had no reason to suspect that Jones was consciously trying to evade a law enforcement officer. . . . The initial stop was illegal.

8

*United States v. Jones*, 619 F.2d 494, 498 (5th Cir. 1980). Other cases have expounded upon how provocation impacts the flight analysis. *See State v. Benton*, 43 A.3d 619, 628 (Conn. 2012) ("As these cases make clear, the judicial concern over provoked flight does not arise every time police conduct precipitates flight, but, rather, pertains to situations in which police have engaged in the sort of provocative conduct that could cause a reasonable individual to take flight for reasons other than criminal culpability."); *see also United States v. Franklin*, 323 F.3d 1298, 1305 (11th Cir. 2003) (Pogue, J., dissenting) ("Where an individual's flight is provoked, however, it cannot support reasonable suspicion. The police may not frighten an individual into fleeing, and then assert his flight as a justification for pursuing and stopping him."); *Marshall ex rel. Gossens v. Teske*, 284 F.3d 765, 771 (7th Cir. 2002) ("But it's doubtful that the officers had even reasonable suspicion to stop Marshall, given that his flight was not 'unprovoked.' Marshall did what any sane person would do if he saw masked men with guns running toward him: he ran like hell. And he ran right to uniformed police officers for protection! He wasn't trying to get away from the 'police' he was trying to get to the 'police' as fast as he could.").

Although the United States Supreme Court has explicitly addressed a situation involving flight and the impact of flight in a reasonable suspicion analysis, an Idaho appellate court has neither applied the analysis to a published opinion nor adopted the *Wardlow* reasoning under the Idaho Constitution. Nevertheless, each party in this appeal argues its position on the basis of whether the motion to suppress would or would not have been granted. In essence, each party asks this Court to decide whether the motion to suppress should have been granted, as though this were a direct appeal. As noted above, the probability of success of a motion to suppress may be determinative of whether counsel provided deficient performance and might also be determinative of prejudice. *Hollon v. State*, 132 Idaho 573, 579, 976 P.2d 927, 933 (1999). We examine the probability of success "in order to determine whether counsel's decision against pressing the motion was within the wide range of permissible discretion and sound trial strategy." *Id.* "If the motion lacked merit and would have been denied, counsel ordinarily would not be deficient for failing to pursue it, and, concomitantly, the petitioner could not have been prejudiced by the want of its pursuit." *Huck v. State*, 124 Idaho 155, 158-59, 857 P.2d 634, 637-38 (Ct. App. 1993).

We have applied the probability of success analysis in situations where the facts and law dictate a result. For example, in *Huck*, the defendant challenged the address on his search warrant, but we determined that upon the facts and existing law, the motion to suppress would have been meritless. *See id.* at 159, 857 P.2d at 638. In a similar vein, but at the opposite end of the spectrum, in *Hoffman v. State*, 153 Idaho 898, 277 P.3d 1050 (Ct. App. 2012), this Court considered the summary dismissal of a claim that counsel provided ineffective assistance by failing to pursue a motion to suppress. Taking the facts set forth by Hoffman as true, we concluded that the law at the time of the search of Hoffman's automobile trunk "did not, however, provide authority for the warrantless search of a trunk incident to a lawful custodial arrest of an occupant of an automobile." *Id.* at 904, 277 P.3d at 1056. According to the Court, unless another exception to the warrant requirement applied, the motion to suppress "may well have succeeded and altered the outcome of Hoffman's case." *Id.* at 905, 277 P.3d at 1057.

Unlike *Huck*, there are factual disputes here based upon the criminal trial record, and these disputes center upon facts that would have played into the totality of the circumstances, had a motion to suppress been filed. The facts potentially giving rise to reasonable suspicion, based on the officer's account, are that around 2:30 a.m., a male walked into and out of the Alley and then, upon the police officer's pulling his car into the Street and engaging the vehicle's headlights, the male turned and looked toward the officer's vehicle, turned again, ran, continued running after the officer exited his vehicle and yelled for the male to stop, and was eventually found hiding under a tree.[6] Unlike *Wardlow*, there was no testimony that Padilla was in a high-crime area or an area with heavy narcotics trafficking. In contrast to the officer's account, Padilla testified that he did not see headlights or any lighting from the vehicle before he ran. And, according to Padilla, "[he] ran between two houses, thinking [he] was going to get jumped because [he] and [his] brothers have gotten jumped before." Padilla further claimed that he did not hear the officer tell him to stop. The district court, however, did not address these factual disputes.

Furthermore, even though Padilla's amended petition and testimony at the evidentiary hearing addressed the failure to file a motion to suppress theory, the district court did not make

---

[6] Although the State asserts that the fact that Padilla had emptied his pockets before being detained should enter into our analysis, the State does not point to any testimony in the record in which an officer witnessed Padilla emptying his pockets or that the second officer knew that Padilla had emptied his pockets prior to seizing Padilla.

findings of fact or conclusions of law relating to this theory, except to say that the evidence would have been admissible even if the investigatory stop were unlawful. Thus, we remand the case to the district court to make the requisite factual findings. With these factual findings, the district court may also make conclusions of law including (a) whether it would have been objectively reasonable for defense counsel to file a motion to suppress, arguing that officers lacked reasonable suspicion under the totality of the circumstances, and (b) whether there is a reasonable probability that the outcome of the proceedings would have been different had counsel filed a motion to suppress.

## IV.

## CONCLUSION

The district court erred when it determined that evidence would have been admissible, even if the investigatory stop were unlawful. However, the district court did not make factual findings or conclusions of law relevant to determine whether defense counsel provided ineffective assistance of counsel by failing to file a motion to suppress. Therefore, we vacate the judgment denying Padilla post-conviction relief, and remand the case to the district court for further proceedings consistent with this opinion.

Judge GRATTON and Judge MELANSON **CONCUR**.