739 P.2d 323

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Robert SCHAFFER, Defendant-Appellant.**

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Sara SCHAFFER, Defendant-Appellant.**

Nos. 15869, 15870.

Supreme Court of Idaho.

May 21, 1987.

Gary W. Elliott, Office of Public Defender, Bonners Ferry, for defendants-appellants.

Alan C. Herzfeld and Byron Johnson, for American Civil Liberties Union Foundation, Inc., Boise, for amicus curiae.

Jim Jones, Atty. Gen., Lynn Thomas, Sol. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

On August 26, 1983, Robert and Sara Schaffer were charged with violating I.C. § 37–2732, *i.e.*, manufacturing a controlled substance (marijuana) and possession of a controlled substance (marijuana), with intent to deliver. On the same day, Schaffers' residence was searched pursuant to a search warrant issued on the previous day. After a preliminary hearing, informations were filed on September 27, 1983, holding the Schaffers to answer for the aforementioned crimes. Thereafter, the Schaffers entered a plea of not guilty to all charges.

Prior to trial, appellants filed a motion to suppress the evidence seized pursuant to the search warrant, claiming that the search was illegal, and asked that the charges against them be dismissed. After a hearing, the Hon. Watt Prather denied their motion to suppress. The appellants also filed a motion to disqualify Judge Prather, pursuant to I.C.R. 25(a). The motion was denied on the grounds that it was untimely.

The trial commenced on November 26, 1984. During the course of jury voir dire examination, appellants' challenge for cause as to a particular juror was denied, and therefore, appellant used one of his peremptory challenges. Subsequently, appellants made an additional challenge for cause on the last juror called for the panel, which was again denied. Since the appellant had used all of his peremptory challenges, that juror remained on the panel. Thereafter, the jury returned guilty verdicts against both appellants.

On appeal, appellants contend that: (1) the trial judge erred when he denied their motion for automatic disqualification pursuant to I.C.R. 25(a); (2) that the trial court erred by denying appellants' motion to suppress evidence; and (3) that the trial court erred in denying appellants' motion to disqualify two jurors for cause and, thereby, allowing one of the biased jurors to remain on the jury which rendered a verdict against the appellants. Additionally, ami-

cus curiae, on behalf of appellants, argues that the prosecutor's late disclosure of discoverable evidence constitutes reversible error. For reasons set forth below, we reverse and remand.

I

Initially, appellants contend that the trial judge erred by denying their motion for his automatic disqualification pursuant to I.C.R. 25(a). That rule provides that a judge may be disqualified by the filing of a motion of disqualification and that such motion shall be automatic if timely filed. The same rule provides that "such motion must be made not later than five days after service of a notice setting the action for trial...." [1] The record indicates the following: The clerk of the court issued an order of trial setting on October 17, 1983, and certified that a copy thereof was mailed to appellants' attorney on the same day. The order for trial setting was not stamped "filed," on the court file, however, until October 25, 1983. Appellants' attorney received the notice on October 31, 1983, and mailed his motion of disqualification that same day. The envelope in which he received the notice bore a post office stamp dated October 26, 1983. Thereafter, the motion of disqualification was received and filed in the court file by the court clerk on November 2, 1983.

Judge Prather, in finding that appellants' motion was untimely filed, relied upon the October 17, 1983, Certificate of Mailing. Appellants contend, however, that the evidence clearly indicates that the *actual* service for mailing occurred on October 26, 1983, rather than October 17, 1983. Thus, appellants assert that the filing of their motion of disqualification was timely and, therefore, should have been granted.

In criminal proceedings the service and filing of papers are governed by the Idaho Rules of Civil Procedure. I.C.R. 49(a). I.R.C.P. 5(b) provides that service by mail is complete upon mailing. Here, a factual dispute exists as to when the notice was

---

1. I.C.R. 25(a) has since been amended to allow for seven days to file a motion of automatic disqualification.

put in the mail. The court clerk's Certificate of Mailing is dated October 17, 1983, whereas the envelope is postage stamped October 26, 1983, which is one day after the notice was filed by the court. The trial court found the mailing to have occurred on October 17, 1983. That particular finding of fact by the trial court will not be disturbed on appeal unless it is clearly erroneous, and clear error will not be deemed to exist if such finding is supported by substantial and competent, although conflicting evidence. *Klein v. Shaw,* 109 Idaho 237, 241, 706 P.2d 1348, 1352 (Ct.App. 1985); I.R.C.P. 52(a).

█ After reviewing the record, we hold that the clear weight of the evidence demonstrates that the notice was deposited in the mail no earlier than October 25, 1983, rather than October 17, 1983. The only evidence supporting the finding that the notice was put in the mail on October 17th is the Certificate of Mailing. On the other hand, the evidence supporting that the notice was mailed on October 25th, is that (1) the notice was filed on October 25th, (2) the post office stamped the envelope containing the notice on October 26th, and, (3) the notice was not received until October 31. It is difficult to believe that the notice was placed in the mail on October 17th, yet not post office stamped until October 26. Considering this fact along with the date of filing and the receipt of the notice by appellants, we hold the trial court erred in finding that the service of notice was complete on October 17, 1983.

As previously noted herein, I.R.C.P. 5(b) provides that service by mail is complete upon mailing. Having determined that the trial court's finding is clearly erroneous, we must now decide whether appellant's motion was timely filed.

█ First, when computing the amount of days in which appellants had to file their motion, the first day is excluded while the last day is included. I.C. § 73–109; I.R.

C.P. 6(a). Thus, in this case, the time began to run on October 26, 1983. Additionally, I.R.C.P. 6(e)(1) provides that, "[w]henever a party has the right ... to do some act ... within a prescribed period after the service of a notice [by mail], ... (3) days shall be added to the prescribed period." Therefore, appellants had eight days from October 26, 1983 to file their motion of disqualification. Since appellants' motion was filed by the court on November 2, 1983, (the eighth day), we hold that it was timely filed. Because the motion was denied below, we must reverse and remand this case for a new trial.

### II (A)

Although our ruling on the issue above is dispositive, we choose to address the suppression of evidence issue to avoid the issue arising again in the new trial. Appellants argue that the trial court should have suppressed the evidence seized at their residence because the description of the premises presented at the probable cause hearing was deficient and, because the location of the premises named in the search warrant was learned as a result of a prior illegal search.[2] We will address each separately.

A search warrant must describe the place to be searched with particularity. U.S. Const., amendment IV; Id. Const., art. 1, § 17; I.C.R. 41. The test for determining sufficiency of the description of the place to be searched is whether the "officer with the search warrant can, with reasonable effort, ascertain and identify the place intended." (Citation omitted.) *State v. Carlson,* 101 Idaho 598, 599, 618 P.2d 776, 777 (1980). Turning to the present case, the directional portion of the warrant contained the following language:

"Traveling North from Bonners Ferry on Highway 95, Turning East on Highway 2 to County Road 76. Located there is a white mail box with Schaffer's name on it, turn right on County Road 76, driving

2. A search warrant was issued on November 5, 1981, for a search of the property of Robert Schaffer and Sara Schaffer. The Schaffers moved to suppress the admission of marijuana found as a result of that search. The motion to suppress was granted on June 18, 1982, on the basis that the search warrant was not supported by probable cause. *State v. Schaffer,* First Judicial District of the State of Idaho, Nos. F7085, F7086, F7087, F7088 (1982).

South on County Road 76 to a fork, staying right and traveling to the next fork, turning left and continuing to a wood residence and greenhouse with opaque windows."

Appellants assert that there were the following errors in the directions on the search warrant: (1) appellants do not have a white mailbox but have received their mail for the last two years at the Moyie Springs Post Office, and (2) appellants do not live on or near County Road 76, but rather off of County Road 77. Despite the inaccuracies in the warrant, the police were able to find the Schaffer residence because two officers knew of its location and, a sign bearing the Schaffers' names was on the property. In any event, it is clear that the Schaffer residence was located in a remote rural area that does not have exact directions or house numbers.

The district court held the description sufficient, relying on the cases of *State v. Carlson, supra; State v. Gomez,* 101 Idaho 802, 623 P.2d 110 (1980), *cert. denied, Gomez v. Idaho,* 454 U.S. 963, 102 S.Ct. 503, 70 L.Ed.2d 378 (1981). In *Carlson,* the Idaho Supreme Court held that there was sufficient description despite the fact that the name of the street was incorrect. The Court held that there was adequate additional description given to assure that the officers could, and did, with reasonable effort, ascertain and identify the place intended to be searched. In *Gomez,* the search warrant indicated that the house was identified with the number 204 posted on the front of the house. While there was a conflict in the testimony, it appears that the number was nonexistent at the time of the search. The *Gomez* court held that, although there was an error in the description, the residence was sufficiently identified by additional physical features in the search warrant.

 Inherent in both those decisions was the determination that no reasonable prospect existed that the wrong location would be searched in reliance on the search warrant. Although the executing officer's knowledge of the place to be searched would not substitute for a complete lack of accurate information in the warrant, *State v. Yoder,* 96 Idaho 651, 534 P.2d 771 (1975), that knowledge is relevant. Furthermore, mere defects or omissions that do not affect the likelihood of an erroneous search are to be ignored. *State v. Hart,* 100 Idaho 137, 594 P.2d 647 (1979). As this Court stated in *Carlson,* "[t]he description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties." *Carlson, supra* 101 Idaho at 599, 618 P.2d at 776, *quoting State v. Yoder,* 96 Idaho 651, 653, 534 P.2d 771, 773 (1976). Accordingly, we agree with the district court's reliance on the *Carlson* and *Gomez* cases in finding that the search warrant contained a sufficient description so as to allow the officers to ascertain the correct identity of the appellants' premises. Even though there was no mailbox and the county road was inaccurate, the officers could find and did find the residence from the description. The fact that the officers knew how to reach the residence combined with the description of the house and greenhouse made the prospect of a mistaken search remote. Therefore, we hold the description on the search warrant was sufficient.

## II (B)

 Appellants next assert that the whereabouts and location of the premises named in the search warrant were obtained through a prior, illegal search. Appellants contend that Fish & Game Officer Morgan was a source of direction to the Schaffer residence in the prior illegal search, and was also a source of direction for the search in the present case. Since the prior search warrant was the subject of a suppession motion which was granted, appellants assert that all evidence obtained during that prior illegal search, including Officer Morgan's knowledge as to the location of appellants' residence, is necessarily tainted and should not be used as a basis for securing a later search warrant. We disagree. Appellants have cited no authority for the proposition that an officer cannot participate in a second search warrant if the officer engaged in a prior invalid search warrant. Furthermore, knowledge

of the location of a residence prior to a search can hardly be characterized as evidence obtained during a search.

## II (C)

In relation to the suppression of evidence issue, the amicus curiae argue that the prosecution's failure to produce discoverable evidence prior to the suppression hearing constitutes reversible error.

On September 28, 1983, appellants made a written request for discovery which included a request for a "statement of all information obtained from any independent special investigations [sic] conducted by the County of Boundary or the City of Bonners Ferry regarding the above-referenced defendants." The prosecutor then filed a motion for protective order, objecting to appellants' request for production of documents regarding the investigation. The court examined the documents prepared during that special investigation, and determined that there appeared to be nothing in the file connected with the case before the court involving the appellants. In late April, 1984, at the end of a hearing on appellants' motion for suppression of evidence, the prosecutor announced to the court that he had two sheets of information that he would like to present to the court for in camera inspection. He referred to these documents as "akin to a previous file." The papers, it turned out, were from the special investigation file, and the papers mentioned appellants' names. Appellants' attorney pointed out that knowledge of this additional information would have changed his preparation for the suppression hearing. He then requested that the court hold open the record with regard to the suppression hearing pending his analysis of the new documentation which the prosecutor had just presented.

Appellants' request for continuance of the trial and additional time for filing of suppression briefs in view of the late receipt of the documents was granted by the court. Appellants contend that the prosecutors, by withholding from them the nature and extent of the special investigations, effectively denied their counsel the opportunity to impeach Officers Kramer and Kane at the suppression hearing with respect to the sources and validity of certain material information presented to the magistrate in support of their application for a search warrant on August 25, 1983. Thus, probable cause may not have been established and, therefore, a search warrant would not have been issued.

Rule 16(b), Idaho Criminal Rules, provides that upon written request certain evidence and materials as set forth in the rule shall be disclosed to the defendant by the prosecution any time following the filing of charges. Among those discoverable items are documents and tangible objects which are in the possession, custody or control of the prosecuting attorney and which are material to preparation of a defense. I.C.R. 16(b)(4).

"Where the question is one of late disclosure rather than failure to disclose, the inquiry on appeal is whether the lateness of the disclosure so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *State v. Hansen*, 108 Idaho 902, 904, 702 P.2d 1362, 1364, (Ct.App. 1985). Therefore, we must decide whether the late disclosure of the documents caused prejudice to appellants, resulting in an unfair trial.

A review of the record illustrates that the court granted appellants' motion for continuance so that they could investigate matters relating to the newly discovered documents and to prepare briefs on their motion to suppress. The record is void of any additional motions that appellants could have made after further investigation if they felt that they were prejudiced. Thus, it appears the additional documents provided little, if any, help to appellants' case. For these reasons we find that the disclosure of documents towards the end of the suppression hearing did not deny appellants a fair trial and, therefore, the prosecution's conduct did not constitute reversible error.

## III

Since this case is reversed and remanded for a new trial, we need not address whether the court erred in denying appellants' motions to disqualify two jurors.

Case is reversed and remanded for proceedings consistent herein.

No costs or attorney fees on appeal.

SHEPARD, C.J., and BAKES and HUNTLEY, JJ., concur.

BISTLINE, J., specially concurring.

Having joined the well-written opinion of Justice Donaldson, I write only to mention an oversight in not discussing that which I thought to have been the point most strongly argued by the solicitor-general in connection with a defendant's right of automatic disqualification. The contention advanced in the state's brief, and again at oral argument, is that under and by virtue of the Idaho Constitution, art. V, §§ 2 and 13, and the 1975 repeal of former I.C. § 1–1801:[1]

Although it was obviously intended that the statute would be replaced with a rule, the constitutional provision requiring legislatively determined procedures is a mandatory provision leaving no discretion to either the legislature or to the

court to alter its requirements. The word "shall" appears in both article V, § 2, of the Idaho Constitution, requiring the legislature to prescribe the jurisdiction of inferior courts and in article V, § 13, which requires the legislature to provide "the methods of proceeding in the exercise of their powers of all the courts below the supreme court." Judicial disqualification quite clearly involves a "method of proceeding" in the exercise of the power of an inferior court. Respondent's Brief, p. 11.

Accordingly, the repeal of the disqualification statute wiped away the right to disqualification because only the legislature has the constitutional authority to provide for such a right. *Id.* at p. 13. It would seem that the office of the attorney general is entitled to a response to its contention—which is not made lightly—and the response should come from the Court as a collegiate body, and not from just one member thereof. That a response is in order is further evidenced by the fact that counsel for the Schaffers has adequately addressed the solicitor-general's contention in the reply brief:

The State further argues that the repeal of the disqualification statute (I.C. § 1–1801) wiped away the right to disqualification. While I.C. 1–1801 was re-

[1] Idaho Const., art. V, § 2 reads:
The judicial power of the state shall be vested in a court for the trial of impeachments, a supreme court, district courts, and such other courts inferior to the supreme court as established by the legislature. The courts shall constitute a unified and integrated judicial system for administration and supervision by the supreme court. The jurisdiction of such inferior courts shall be as prescribed by the legislature....
Idaho Const., art. V, § 13 reads:
The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of government; but the legislature shall provide a proper system of appeals and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the supreme court, so far as the same may be done without conflict with this constitution.
I.R.C.P. 40(D)(1), which replaced I.C. 1–1801, reads:
In any action in the district court or the magistrate's division thereof, any party may

disqualify one (1) judge, without cause, by filing a motion of disqualification which shall not state any grounds therefor other than this rule of automatic disqualification. Such motion must be made not later than five days after service of a notice setting the action for trial, pre-trial, or hearing on the first contested motion, and must be made before any contested proceeding in such action has been submitted for decision to the judge; provided, where a new trial has been ordered by the trial court or any appellate court on appeal any party may make such motion not later than five days after service of an order setting the action for retrial. In the event there are multiple parties plaintiff, defendant or otherwise, the trial court shall determine whether such coparties have an interest in common in the action so as to be required to join in a disqualification without cause, or that such coparties have an adverse interest in the action so that each adverse coparty will have the right to file one disqualification without cause.

pealed by 1975 Idaho Sess. laws, ch. 242, p. 651, it should be noted that the enactment repealing that provision stated that its purpose was, "To repeal procedural statutes in conflict with or covered by rules adopted by the Idaho Supreme court on procedural matters." See *State vs. Knee* [101 Idaho 484, 616 P.2d 263 (1980)] supra. Obviously, the legislature recognized that in repealing I.C. § 1–1801 that it was procedural in nature and that the Supreme Court had the authority to promulgate a rule to replace the repealed statute. Thus, the legislature itself provides statutory authority for the Court to provide for automatic disqualification, as provided for in Idaho Criminal Rule 25, and the State's argument to the contrary has no merit. Appellant's Reply Brief, p. 3.

Moreover, the state's heavy constitutional argument is hardly persuasive in this particular instance where Judge Prather assumed jurisdiction of this criminal action only after the state had first utilized the disqualification rule to remove Judge Cogswell from the case—which most practitioners in North Idaho would view with a jaundiced eye.

Mention might also be made that there is a move afoot, apparently supported by some trial court administrators, that has for its purpose to do away with or greatly restrict the procedural rule allowing for one automatic disqualification. So the argument goes, at least as I understand it from what little has reached my ears, that it interferes with the administrative practice of requiring that cases at issue be double-set and triple-set—said to be a matter of expedition and hence of *foremost importance* in our judicial system. The judicial production line, i.e., disposition or plain disposal of cases on a rapid basis seems to be replacing the goal of cases being determined on a just basis.

Mention might also be made in connection with the concerns of the solicitor-general that a far more important issue to be addressed is Rule 1102 of the Idaho Rules of Evidence whereby the Supreme Court, by divine right, has ruled of "no force or effect" statutory provisions as to admissi-

bility of evidence which are conflicting with the Court's rules, irrespective of whether the statutes are past, in *praesenti*, or in future, and irrespective of such statutes being wholly or largely of a substantive nature, for example, witness privilege. Now, *there* is a concern which has huge statewide ramifications, and far more deserving of the attention of the office of the attorney general than the contention addressed today. I do not gainsay, however, that the right to disqualify a judge is a substantive right, and only the manner of exercising that substantive right is procedural. But as pointed out two or three hundred opinions ago, an acquiescing legislature has complacently abandoned the field to the Supreme Court, as pointed out by the Schaffers' reply brief, set out *supra*.

The right of one automatic disqualification in my view has served a good purpose and its destruction should be carefully guarded against.