141 P.3d 1147

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John Michael O'KEEFE, Defendant–Appellant.**

**No. 32127.**

Court of Appeals of Idaho.

May 17, 2006.

Review Denied Aug. 24, 2006.

Frederick G. Loats, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

PERRY, Chief Judge.

John Michael O'Keefe appeals from his judgment of conviction, entered following his conditional plea of guilty to trafficking in marijuana and conspiracy to traffic in marijuana, reserving the right to appeal the district court's order denying his motion to suppress. We affirm.

## I.

### FACTS AND PROCEDURE

Late one evening in July 2003, a power line running between a power pole and a metal warehouse, which O'Keefe rented, was arcing and sparking. Melting wire from the power line caused molten metal to drip onto the ground, which ignited a grass fire approximately 10 feet from the warehouse. Fire officials responded and, after the grass fire was contained, the captain of the fire department arrived. The captain determined that an electrical problem inside the warehouse could have caused the power line to arc and spark and that such an electrical problem could have caused a fire inside. There were no visible signs that the warehouse was on fire, but the captain was unable to see inside the building because the windows were blackened. The fire captain also concluded that an electrical problem inside could again cause the power line to arc and spark, allowing another fire to ignite once electricity was restored to the warehouse. The captain therefore concluded that it was necessary to enter the warehouse to inspect the circuits.

A man identifying himself as an employee of the warehouse indicated that he did not have a key and no one would be available to unlock the warehouse until the next day. The captain instructed a fire official to climb a ladder, enter the warehouse through a second floor window, and open a door. As the fire official made his way from the second floor to the ground level, he noticed drying marijuana plants and the odor of marijuana. Once the fire official opened the warehouse door, the captain could see marijuana plants drying on a rack. The captain notified the police of his discovery. Responding police secured the warehouse and, the following day, obtained and executed a search warrant. Inside the warehouse, police found more than 2500 marijuana plants and equipment associated with growing marijuana. Subsequently, police obtained a search warrant for O'Keefe's residence and seized a computer, financial records, and gardening catalogs. O'Keefe was charged with trafficking in marijuana, I.C. § 37–2732B(a)(1)(c), and conspiracy to traffic in marijuana. I.C. §§ 37–2732B(a)(1)(c), 18–1701.

O'Keefe filed a motion to suppress, challenging the fire official's entry into the warehouse and the validity of search warrants for his residence and the warehouse. The district court denied O'Keefe's motion. O'Keefe pled guilty to both charges, reserving his right to appeal the denial of his motion to suppress. This appeal followed.

## II.

### ANALYSIS

O'Keefe contends that the fire official's entry into the warehouse violated his right to be free from unreasonable searches. O'Keefe also asserts that, because the search warrant for the warehouse listed an incorrect address, it failed to adequately identify the premises to be searched. O'Keefe further alleges that the search warrant for his residence was unsupported by probable cause. O'Keefe thus argues that the district court erred by denying his motion to suppress.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credi-

bility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## A. Entry into the Warehouse

■ O'Keefe contends that, at the time the captain ordered the fire official to enter the warehouse, the grass fire was contained and there was no risk that it would extend to the metal warehouse. O'Keefe therefore asserts that no compelling need justified the captain's order to enter the warehouse and, instead, he should have first obtained a warrant.

■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. The protections afforded by the Fourth Amendment apply not only to residences but also to commercial or business property. *United States v. Sandoval–Vasquez,* 435 F.3d 739, 742 (7th Cir.2006); *see also Dow Chemical Co. v. United States,* 476 U.S. 227, 235, 106 S.Ct. 1819, 1825, 90 L.Ed.2d 226, 235 (1986). Additionally, there is no diminution in a person's reasonable expectation of privacy simply because the official conducting the search wears the uniform of a fire official rather than a police officer or because his or her purpose is to ascertain the cause of a fire rather than to look for evidence of a crime. *Michigan v. Tyler,* 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486, 496 (1978); *State v. Voss,* 683 N.W.2d 846, 849 (Minn.Ct.App. 2004). Accordingly, as a general matter, official entries to investigate the cause of the fire must adhere to the warrant procedures of the Fourth Amendment. *Tyler,* 436 U.S. at 508, 98 S.Ct. at 1949, 56 L.Ed.2d at 497. Evidence acquired by law enforcement in violation of these constitutional protections must be suppressed in a criminal prosecution of the persons whose rights were violated. *State v. Buterbaugh,* 138 Idaho 96, 98–99, 57 P.3d 807, 809–10 (Ct.App.2002).

■ An official's warrantless entry into a private area is presumed to be unreasonable. *See Welsh v. Wisconsin,* 466 U.S. 740, 748–49, 104 S.Ct. 2091, 2096–97, 80 L.Ed.2d 732, 742–43 (1984); *State v. Wiedenheft,* 136 Idaho 14, 16, 27 P.3d 873, 875 (Ct.App.2001). This presumption may be overcome only under limited, well-recognized exceptions to the warrant requirement such as an entry based upon probable cause and exigent circumstances or consent. *State v. Abeyta,* 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct.App. 1998). The exigent circumstances exception applies when there is a compelling need for action and no time to secure a warrant. *Buterbaugh,* 138 Idaho at 99, 57 P.3d at 810; *State v. Barrett,* 138 Idaho 290, 293, 62 P.3d 214, 217 (Ct.App.2003). To determine the applicability of the exigent circumstances exception, we apply an objective standard to determine whether the facts known to the official at the time of entry, along with reasonable inferences drawn thereupon, would warrant a person of reasonable caution in the belief that the action taken was appropriate. *Barrett,* 138 Idaho at 293, 62 P.3d at 217; *State v. Pearson–Anderson,* 136 Idaho 847, 850, 41 P.3d 275, 278 (Ct.App.2001). Emergency situations are one of the most compelling events giving rise to exigent circumstances. *See United States v. Holloway,* 290 F.3d 1331, 1335 (11th Cir.2002). Although we scrutinize claims of exigency to ensure that they do not operate as mere pretexts for otherwise warrantless and unlawful entries and searches, we also strive to avoid second-guessing the decisions of government officials who legitimately believe they are confronting an urgent situation. *See Barrett,* 138 Idaho at 294, 62 P.3d at 218; *Pearson–Anderson,* 136 Idaho at 850, 41 P.3d at 278.

The state asserts that there was a possibility of an electrical problem inside the warehouse which could have caused a fire inside and, because the windows were blackened, entry into the warehouse was the only way to ascertain whether a fire was burning. The state also alleges that the possible electrical problem created the risk another fire would start once electricity was restored to the warehouse. Thus, the state contends that the danger presented by the possible electrical problem inside the warehouse presented a compelling need for immediate action. Further, because of the late hour and unavailability of a key until the following day,

there was no time to secure a warrant or obtain consent.

■■■■ A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry reasonable. *Tyler*, 436 U.S. at 509, 98 S.Ct. at 1949, 56 L.Ed.2d at 498; *see also Buterbaugh*, 138 Idaho at 99, 57 P.3d at 810. Indeed, it would defy reason to suppose that fire officials must secure a warrant or consent before entering a burning structure to put out the blaze. *Tyler*, 436 U.S. at 509, 98 S.Ct. at 1949, 56 L.Ed.2d at 498. Furthermore, the aftermath of a fire often presents exigencies that will not tolerate the delay necessary to obtain a warrant or to secure the owner's consent to inspect fire-damaged premises. *Michigan v. Clifford*, 464 U.S. 287, 293, 104 S.Ct. 641, 646–47, 78 L.Ed.2d 477, 483–84 (1984). Consequently, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. *Clifford*, 464 U.S. at 293, 104 S.Ct. at 646–47, 78 L.Ed.2d at 483–84; *Tyler*, 436 U.S. at 510, 98 S.Ct. at 1950, 56 L.Ed.2d at 498–99.

O'Keefe contends that, because the warehouse was never on fire and there was no risk the grass fire could extend to the warehouse, the rule set forth in *Tyler* permitting fire officials to remain in a building to investigate a fire's cause is inapplicable. O'Keefe asserts that there was no risk an electrical problem would cause another fire because the power line had melted through and the warehouse was without electricity. O'Keefe thus urges that the fire captain's desire to exercise caution and ensure there was no electrical problem inside, while commendable, failed to present a compelling need for immediate action sufficient for this case to fall within the exigent circumstances exception to the warrant requirement. To support his position, O'Keefe cites to cases where post-fire searches did not fall within the exigent circumstances exception. *See Clifford*, 464 U.S. at 296–98, 104 S.Ct. at 648–49, 78 L.Ed.2d at 485–87; *United States v. Parr*, 716 F.2d 796, 812 (11th Cir.1983); *Buterbaugh*, 138 Idaho at 100, 57 P.3d at 811.

However, in *Clifford, Parr*, and *Buterbaugh*, the searches found to violate the Fourth Amendment were not for the purpose of preventing a fire's imminent recurrence but, instead, involved arson investigation or efforts to secure valuables. *See Clifford*, 464 U.S. at 296–98, 104 S.Ct. at 648–49, 78 L.Ed.2d at 485–87; *Parr*, 716 F.2d at 816; *Buterbaugh*, 138 Idaho at 100–01, 57 P.3d at 811–12. In *Clifford*, the search was of a private residence, whose owner had asserted his privacy interest by securing the fire damaged home prior to arson investigators' entry. The Court indicated that the particularly strong privacy interest, which exists in a private residence, distinguished the case from *Tyler*, which involved a furniture store. *Clifford*, 464 U.S. at 296–97, 104 S.Ct. at 648–49, 78 L.Ed.2d at 485–86. Further, approximately five hours passed between the time fire officials left the residence and when the arson investigators arrived. Thus, unlike the situation in *Tyler*, the arson investigation was not a continuation of a search begun immediately after the fire. *Clifford*, 464 U.S. at 296, 104 S.Ct. at 648, 78 L.Ed.2d at 485–86. In *Buterbaugh*, a fire official made a routine walk through of a home following a fire and discovered evidence of marijuana growing in a bedroom closet. The fire official testified that his inspection of the bedroom was unrelated to any effort to extinguish the fire or determine its origin and, instead, he was conducting an inventory to establish whether there were any valuables. This Court therefore concluded that exigent circumstances did not justify the fire official's search of the closet. *Buterbaugh*, 138 Idaho at 100, 57 P.3d at 811; *see also Voss*, 683 N.W.2d at 850–51 (search of basement for fire investigation purposes lawful but opening freezer in basement to satisfy fire official's curiosity not justified.)

In *Tyler*, the Court reasoned that prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. *Tyler*, 436 U.S. at 510, 98 S.Ct. at 1950, 56 L.Ed.2d at 498–99. Here, the fire captain testified that, in his training and experience, "a circuit or a breaker that was stuck inside" could have caused the power line to arc and spark. The record reveals that the power

company was called that night to restore electricity to the warehouse. Before allowing the power company to re-establish electricity to the warehouse, it was the fire captain's duty to evaluate the safety of the building. The fire captain also testified that an electrical problem could have caused a smoldering fire inside the warehouse or caused the breaker box to hold heat. Because the windows were blackened, the fire captain could not determine if there was a fire in the warehouse without entering. The warehouse employee informed the fire captain that he did not have a key and that no one would be available to unlock the warehouse until the following day.

Unlike a search for valuables or an arson investigation, the possibility of an electrical problem in this case gave rise to the need for immediate investigation in order to detect any continuing danger. Particularly considering that the grass fire occurred during July, we conclude the need to prevent the outside fire's recurrence by ensuring that its origin was not an electrical problem inside the warehouse was no less compelling than the need to prevent the recurrence of a fire in a building. The captain's training and experience led him to suspect that an electrical problem had already caused a fire inside. The late hour and the absence of anyone who could provide access to the warehouse further supported the district court's finding that there was a compelling need for action and no time to secure a search warrant or consent. We are also not confronted in this case with the heightened expectation of privacy that exists in a private residence but, rather, with a commercial warehouse. Additionally, there is no suggestion that, at the time the warehouse was accessed, the captain sought evidence of a crime.

The fire captain ordered that the warehouse be entered in order to determine if an electrical problem had caused a fire inside or would cause a fire to occur once electricity was restored to the warehouse. We are not concerned here with a purported exigency that operated as a pretext for an otherwise unlawful entry, and we decline to second-guess the captain's decision, which he made in legitimate belief that an electrical problem inside the warehouse posed an urgent danger. Accordingly, the district court did not err by concluding that exigent circumstances justified the warrantless entry into the warehouse.

## B. Search Warrant for Warehouse

The search warrant listed the warehouse's address as 4775 East Seltice Way, whereas O'Keefe asserts that the address is 4760 East Seltice Way. O'Keefe contends that, because the address listed for the warehouse in the search warrant was incorrect, the search warrant failed to adequately describe the place to be searched. The state asserts that, assuming the address was incorrect, the description of the property was sufficient to allow police to distinguish the warehouse from other property and there was no chance the wrong building would be searched.

The Fourth Amendment safeguards the privacy of citizens by insuring against the search of premises where probable cause is lacking. *State v. Young*, 136 Idaho 711, 714, 39 P.3d 651, 654 (Ct.App. 2002). Accordingly, a search warrant must describe the place to be searched with particularity. *State v. Schaffer*, 112 Idaho 1024, 1027, 739 P.2d 323, 326 (1987); *State v. Schanefelt*, 115 Idaho 129, 130, 765 P.2d 154, 155 (Ct.App.1988). The purpose of the particularity requirement is to minimize the risk that officers executing search warrants will mistakenly search a place other than the one intended by the magistrate. *Schanefelt*, 115 Idaho at 130, 765 P.2d at 155. Thus, the description must be sufficiently clear so that the property to be searched is recognizable from other neighboring properties. *Young*, 136 Idaho at 715, 39 P.3d at 655; *Schanefelt*, 115 Idaho at 130, 765 P.2d at 155. The test for determining the sufficiency of the description of the place to be searched is whether the place is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort and whether there is any reasonable probability that another premise might be mistakenly searched. *Young*, 136 Idaho at 715, 39 P.3d at 655.

■■■ An incorrect address for the premises to be searched may invalidate a search warrant. *Huck v. State,* 124 Idaho 155, 159, 857 P.2d 634, 638 (Ct.App.1993). However, search warrants are not deeds or tax notices and, thus, are not subject to technical drafting requirements and should be interpreted in a commonsense and realistic fashion. *Young,* 136 Idaho at 715, 39 P.3d at 655. Although the executing officer's knowledge of the place to be searched would not substitute for a complete lack of accurate information in the warrant, that knowledge is relevant. *Schaffer,* 112 Idaho at 1028, 739 P.2d at 327. Defects or omissions that do not affect the likelihood of an erroneous search are to be ignored. *Schaffer,* 112 Idaho at 1028, 739 P.2d at 327; *see also Huck,* 124 Idaho at 159, 857 P.2d at 638.

Here, in addition to listing the address, the search warrant described the warehouse as a blue, industrial-style building, approximately 30 feet wide by 130 feet long, with two white doors on the north and the south, blackened windows, and a utility pole on the southeast corner. The warrant also described several vehicles located on the property. Furthermore, the officer who applied for the warrant had been present at the warehouse the night of the fire and returned to execute the search warrant. We note that numbers indicating the address were not on the exterior of the warehouse. Thus, although a correct address may have helped prevent an erroneous search of a different property, listing the correct numbers would not have assisted the officer in locating the warehouse.

Interpreting the description of the warehouse in a commonsense fashion, there was no risk the executing officer, who was familiar with the warehouse, would have erroneously searched the wrong property. Even assuming the warehouse's address was listed incorrectly on the search warrant, we conclude that the warrant described the warehouse with sufficient particularity. Therefore, the district court correctly determined that any defect in the address of the warehouse could be disregarded.

## C. Search Warrant for Residence

■■■ O'Keefe asserts that the officer applying for a search warrant for his residence relied on evidence demonstrating the existence of the marijuana-growing operation in the warehouse and O'Keefe's involvement in that operation. O'Keefe alleges that additional facts demonstrating a nexus between his residence and the marijuana-growing operation were required to establish probable cause that evidence of that operation would be found at his residence. O'Keefe therefore contends that the magistrate erred in issuing a search warrant for his residence.

■■■ Initially, the state asserts that we cannot consider the transcript of the search warrant proceedings, which includes the officer's oral affidavit in support of the search warrant for O'Keefe's residence, because O'Keefe failed to have that transcript admitted into evidence during the suppression proceedings. However, in response to a motion filed by O'Keefe, the district court ordered that transcripts be prepared of the search warrant proceedings. O'Keefe moved to reopen the suppression proceedings so that he could present further evidence and raise other issues after the transcripts had been reviewed. The district court granted O'Keefe's motion, finding that, in fairness and caution, O'Keefe should be allowed to address new issues. Thereafter, a transcript of the search warrant proceedings was lodged with the district court. O'Keefe filed a supplemental brief in support of his motion to suppress alleging the search warrant for his residence was unsupported by probable cause and citing to the search warrant proceedings transcript. The state filed a brief in opposition to O'Keefe's motion to suppress, in which it also cited to the transcript of the search warrant proceedings to support its argument. Accordingly, the state's assertion that the search warrant proceedings transcript was not properly before the district court and, consequently, cannot be considered by us in this appeal, is without merit.

■■■ When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527, 548–49 (1983);

*State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). In this evaluation, great deference is paid to the magistrate's determination. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 546–47; *State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct.App.1997). The test for reviewing the magistrate's action is whether he or she abused his or her discretion in finding that probable cause existed. *State v. Holman*, 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct.App.1985). When a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid. *State v. Kelly*, 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct.App.1984).

▇▇▇▇ The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 17, of the Idaho Constitution is virtually identical to the Fourth Amendment, except that "oath or affirmation" is termed "affidavit." In order for a search warrant to be valid, it must be supported by probable cause to believe that evidence or fruits of a crime may be found in a particular place. *Josephson*, 123 Idaho at 792–93, 852 P.2d at 1389–90. When determining whether probable cause exists:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates*, 462 U.S. at 238, 103 S.Ct. at 2331, 76 L.Ed.2d at 548; *see also Wilson*, 130 Idaho at 215, 938 P.2d at 1253. A magistrate need only determine that it would be reasonable to seek the evidence in the place indicated in the warrant, not that the evidence sought is there in fact, or is more likely than not to be found, where the search takes place. *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990); *State v. Fairchild*, 121 Idaho 960, 966, 829 P.2d 550, 556 (Ct.App.1992).

▇▇▇▇ Probable cause to believe that a person has committed a crime does not necessarily give rise to probable cause to search that person's home. *State v. Molina*, 125 Idaho 637, 642, 873 P.2d 891, 896 (Ct.App. 1993); *State v. Sholes*, 120 Idaho 639, 642, 818 P.2d 343, 346 (Ct.App.1991). Nonetheless, even though criminal objects are not tied to a particular place by any direct evidence, an inference of probable cause to believe that they would be found in that place can be reasonable. *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir.1999); *Fairchild*, 121 Idaho at 966, 829 P.2d at 556. A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir.1999); *State v. Stevens*, 139 Idaho 670, 673, 84 P.3d 1038, 1041 (Ct.App.2004). Moreover, the magistrate may take into account the experience and expertise of the officer conducting the search in making a probable cause determination. *Terry*, 911 F.2d at 275; *State v. Wilson*, 120 Idaho 643, 647, 818 P.2d 347, 351 (Ct.App.1991).

There is a split of authority, however, as to whether an officer's opinion or a logical inference is sufficient to provide probable cause to search a residence for drugs where there is evidence that the occupant is a drug dealer, but no direct evidence of illegal activity connected to the home. *See People v. Pressey*, 102 Cal.App.4th 1178, 126 Cal.Rptr.2d 162, 165 (2002); *State v. Thein*, 138 Wash.2d 133, 977 P.2d 582, 587–88 (1999). Several jurisdictions, including Idaho, have concluded that it is reasonable to infer that a regular drug trafficker keeps evidence of drug dealing in his or her residence. *See United States v. Grossman*, 400 F.3d 212, 217–18 (4th Cir. 2005); *Feliz*, 182 F.3d at 87–88; *McClellan*, 165 F.3d at 546; *United States v. Luloff*, 15 F.3d 763, 768 (8th Cir.1994); *United States v. Thomas*, 989 F.2d 1252, 1254–55 (D.C.Cir.

1993); *Terry*, 911 F.2d at 275–76; *Pressey*, 126 Cal.Rptr.2d at 165–66; *State v. Nunez*, 138 Idaho 636, 642, 67 P.3d 831, 837 (2003); *Stevens*, 139 Idaho at 673–74, 84 P.3d at 1041–42; *State v. Ruoho*, 685 N.W.2d 451, 457 (Minn.Ct.App.2004); *State v. Ward*, 231 Wis.2d 723, 604 N.W.2d 517, 523 (2000). Conversely, some jurisdictions have refused to hold that a person's status as drug dealer, standing alone, creates a fair probability evidence will be found in drug dealer's residence and, instead, require that probable cause to search a certain location be supported by a factual nexus between the evidence sought and the place to be searched. *See United States v. Frazier*, 423 F.3d 526, 532–33 (6th Cir.2005); *Yancey v. State*, 345 Ark. 103, 44 S.W.3d 315, 321–24 (2001); *State v. Coley*, 145 Md.App. 502, 805 A.2d 1186, 1202 n. 18 (2002); *State v. Silvestri*, 136 N.H. 522, 618 A.2d 821, 824 (1992); *Thein*, 977 P.2d at 589–90.

A common thread among cases upholding a finding of probable cause based on such an inference is that the affidavit or application for the search warrant indicated that the defendant was a drug dealer. *See Luloff*, 15 F.3d at 768; *Pressey*, 126 Cal.Rptr.2d at 168; *Nunez*, 138 Idaho at 641–42, 67 P.3d at 836–37; *Stevens*, 139 Idaho at 673, 84 P.3d at 1041. In *Nunez*, the Idaho Supreme Court concluded that, because the defendant was involved in heavy drug-trafficking operations over the course of several months involving large amounts of methamphetamine and money, it was reasonable for the magistrate to issue a warrant to search for drug trafficking evidence at the defendant's residence. *Nunez*, 138 Idaho at 642, 67 P.3d at 837. Similarly, in *Stevens*, a confidential informant informed police that the defendant sold drugs and police observed the defendant at a house where a confidential informant had recently purchased drugs. Police then initiated a traffic stop during which the defendant admitted to possession of methamphetamine. In the subsequent search incident to the defendant's arrest, police discovered several grams of methamphetamine, over $900, and apparent drug ledgers. In upholding the magistrate's finding of probable cause to issue a search warrant of the defendant's residence, this Court noted that the evidence leading up to and found during the traffic stop indicated that the defendant's drug possession was not an isolated incident but, rather, part of ongoing drug-trade activities. *Stevens*, 139 Idaho at 673, 84 P.3d at 1041. Although that evidence did not point directly to the defendant's residence, the magistrate considering the warrant application could reasonably infer that evidence such as scales, packaging materials, ledgers, and cash would probably be found at the defendant's home. *Stevens*, 139 Idaho at 673–74, 84 P.3d at 1041–42.

Here, in application for the search warrant of O'Keefe's residence, the officer testified that the search of the warehouse revealed O'Keefe leased the warehouse, maintained utilities in his name, and several vehicles belonging to O'Keefe were located at the warehouse. The officer also indicated that the number of marijuana plants and the type of equipment found in the warehouse suggested a sophisticated marijuana-growing operation consistent with drug trafficking. The officer testified that, in his training and experience, manufacturers of marijuana maintain fruits of their crime, such as details about buying and selling, at their residences. We conclude that, under the totality of these circumstances, the magistrate could reasonably infer that O'Keefe was involved in a large-scale marijuana-growing operation and that evidence of the operation would be found at O'Keefe's residence.

Nevertheless, as noted by the court in *Feliz*, we do not suggest that, in all criminal cases, there will automatically be probable cause to search a suspect's residence. *See Feliz*, 182 F.3d at 88. Rather, considering a search warrant application in the proper commonsense and realistic fashion, some scenarios may result in the inference of probable cause to believe criminal objects are located in a particular place, notwithstanding the absence of direct evidence. *Id.* In the case of drug traffickers, such inferences can be reasonable given the large quantities of

drugs and the additional items of property typically involved, such as customer lists, sales records, manufacturing equipment and materials, packaging, scales, weapons, and large amounts of cash.[1] *Pressey,* 126 Cal. Rptr.2d at 170; *see also Feliz,* 182 F.3d at 87–88; *Stevens,* 139 Idaho at 673, 84 P.3d at 1041.

Here, the sophisticated marijuana-growing operation found in the warehouse was analogous to the evidence of extensive, ongoing drug dealing in *Nunez* and *Stevens.* Further, that O'Keefe rented the warehouse, kept several vehicles at the warehouse, and had utilities in his name, strongly suggested O'Keefe's involvement in that operation. Therefore, based on the nature of the evidence sought, the type of offense, and the evidence tying O'Keefe to that operation, the magistrate did not abuse its discretion by concluding there was a fair probability that evidence of drug trafficking would be found in O'Keefe's residence.

## III.

## CONCLUSION

Exigent circumstances justified the fire official's warrantless entry into the warehouse. Further, any error in the address of the search warrant for the warehouse did not create a risk that the wrong location would be searched, and the search warrant of O'Keefe's residence was supported by probable cause. We therefore conclude that the district court did not err in denying O'Keefe's motion to suppress. O'Keefe's judgment of conviction for trafficking in marijuana and conspiracy to traffic in marijuana is affirmed.

Judge LANSING and Judge GUTIERREZ concur.

---

1. An inference of contraband is more speculative in the case of drug users. *Pressey,* 126 Cal. Rptr.2d at 168. Thus, where the evidence in support of a search warrant fails to clearly establish that a person is a drug trafficker, rather than in mere possession of drugs, courts have concluded an opinion or inference is insufficient to establish probable cause to search a residence. *See Pressey,* 126 Cal.Rptr.2d at 167 (declining to extend approach upholding search warrants involving drug dealers to drug users); *State v. Kahn,* 555 N.W.2d 15, 18 (Minn.Ct.App.1996) (more than mere possession of an ounce of cocaine is required to demonstrate probable cause that an individual is a dealer and that his or her home contains evidence or contraband); *State v. Johnson,* 6 Neb.App. 817, 578 N.W.2d 75, 83 (1998) (discovery of drugs without an indication of the amount or an inference that the amount was other than that consistent with personal use, and of a prior conviction at unspecified time in past, did not support issuance of search warrant); *Anzualda v. Commonwealth,* 44 Va.App. 764, 607 S.E.2d 749, 755–56 (2005) (evidence of single drug transaction insufficient to support inference that defendant was known drug dealer).